

FILED

03/01/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 15, 2017

## GENE E. NEVILS a/k/a GENE E. EDWARDS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Williamson County**
**No. CR-068918      James G. Martin, III, Judge**

### No. M2016-00686-CCA-R3-PC

In 2014, the Petitioner, Gene E. Nevils a/k/a Gene E. Edwards, pleaded guilty to sale of 0.5 or more grams of cocaine and was sentenced to twelve years of incarceration. In 2015, the Petitioner filed a *pro se* petition for post-conviction relief, alleging that he had not entered his guilty plea knowingly and voluntarily and that he had received the ineffective assistance of counsel. The post-conviction court held a hearing on the petition and denied relief. We affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and TIMOTHY L. EASTER, J., joined.

Jonathan W. Turner, Thompson's Station, Tennessee, for the appellant, Gene E. Nevils.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Kim R. Helper, District Attorney General; and Sean B. Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts and Procedural History

This case arises from the Petitioner's sale of cocaine to a confidential informant ("CI"). For this offense, a Williamson County grand jury indicted the Petitioner for sale of a Schedule II substance and sale of a Schedule II substance within 1,000 feet of school.

### A. Guilty Plea

The Petitioner initially pleaded not guilty and elected to proceed to trial. After the

first day of trial, during which the State had presented several witnesses, the Petitioner negotiated a plea agreement with the State and pleaded guilty to sale of 0.5 grams or more of cocaine.[1] At the guilty plea hearing, the trial court questioned the Petitioner about whether he wanted to give up his right to a trial, his right to appeal, his right to testify, and if he was deciding to plead guilty knowingly and voluntarily. The Petitioner informed the trial court that he understood his rights and that it was strictly his decision to plead guilty. The trial court informed him that he would be sentenced as a Range II, multiple offender, with an applicable sentencing range of twelve to twenty years. The trial court informed him that his release eligibility would be 35%. The Petitioner testified that he understood his sentencing possibilities and that he was entering his guilty plea under his own free will after discussions with his lawyer and the State. The Petitioner stated that he was satisfied with his lawyer's representation.

The State then recited the following facts as a basis for the trial court's acceptance of the Defendant's guilty plea:

> [T]he State would show that . . . narcotics detectives with the Franklin Police Department did utilize a confidential informant to arrange a purchase of crack cocaine with the [Petitioner]. That the confidential informant was provided with recorded Franklin Police Department drug fund money. That he was wired with a transmitter so that detectives could monitor the deal in realtime. . . . [T]he confidential informant did make contact with the [Petitioner]. During that contact there was a delivery of the $100 of recorded money to the [Petitioner] by the confidential informant. The [Petitioner] did, in turn, deliver back to the confidential informant an amount of a white substance. That white substance was then surrendered to the detectives and was submitted to the T.B.I. for forensic analysis and did come back positive for cocaine in an amount greater than point five grams.

The trial court sentenced the Petitioner to twelve years to be served at 35% in the Tennessee Department of Correction.

## B. Post-Conviction Proceedings

The Petitioner filed a petition for post-conviction relief, *pro se*. The post-conviction court appointed an attorney, and the attorney filed an amended petition, alleging that the Petitioner had received the ineffective assistance of counsel and that he had entered his guilty plea unknowingly and involuntarily. He alleged that his plea was not knowingly entered because his trial counsel ("Counsel") did not explain to him: his

---

[1] As part of the plea agreement, the Petitioner pleaded guilty to a separate offense in another pending case, for which he was to receive a six-year sentence to be served consecutively to his sentence in the present case.

right to appeal; the result of the investigation; the results of a discovery request; and his defenses. The Petitioner additionally alleged that his plea was coerced because he was pressured by the State to plead guilty. The Petitioner argued that Counsel's representation throughout the plea process amounted to the ineffective assistance of counsel. The post-conviction court subsequently held a hearing, during which the following evidence was presented: the Petitioner testified that his jury trial was underway when he elected to plead guilty. The Petitioner recalled that, before he pleaded guilty, the CI in his case and a police officer testified before the jury on the first day of trial. The Petitioner entered a guilty plea the following day pursuant to a plea agreement wherein the State agreed to dismiss one of the indicted counts. About his decision to plead guilty, the Petitioner testified that he initially thought that Counsel was leading him in the "right direction." Counsel had been his attorney for a few months, prior to which the Petitioner was represented by several other attorneys.

On the day the Petitioner entered his guilty plea, he spoke first with the defense investigator who told him that, despite the investigator's work, the jury was going to find him guilty. The investigator told him that the Petitioner's sister and girlfriend wanted him to plead guilty. The Petitioner's sister told him that she had spoken with Counsel and the investigator and that they had drawn up a plea agreement that the Petitioner's sister advised him to take. The investigator then called the Petitioner's girlfriend on the telephone, and she was crying and telling the Petitioner to plead guilty. The Petitioner testified that he wanted to continue with the jury trial but that he changed his mind after those conversations. The Petitioner testified that he would not have pleaded guilty had he not spoken with his sister and girlfriend. When he agreed to plead guilty, the Petitioner was upset and crying, and Counsel told him he was doing the right thing.

The Petitioner recalled that, prior to pleading guilty, he had not seen the results of any investigation, although the Petitioner stated that the private investigator was not hired by Counsel but by the Petitioner himself. The Petitioner testified that he never reviewed discovery and that he could not remember Counsel's defense strategy.

On cross-examination, the Petitioner agreed that Counsel was appointed to represent him in January 2014 and that Counsel visited the Petitioner in jail along with the private investigator but that they discussed "nothing" during the visit. Both Counsel and the investigator visited the Petitioner in jail on other occasions. The Petitioner agreed that Counsel did a good job questioning witnesses during the first day of trial and was "prepared but could have [done] better." The Petitioner agreed that as a result of the conversations with his sister and girlfriend, he chose to plead guilty. The Petitioner agreed that he understood that he was pleading guilty and what his possible sentence would be as well as the elements of the crime. The Petitioner stated, however, that there were "lots of things" he did not understand at the plea hearing that he answered "yes" to

when asked. The Petitioner testified that he was uneducated and could not read well, so he was unable to understand any documents that the trial court gave him to read, including the plea agreement. The Petitioner denied that Counsel went over the documents with him. The Petitioner maintained that despite his testimony at the guilty plea submission hearing that he understood the ramifications of the plea agreement and pleading guilty, he did not understand them at the time. The Petitioner agreed that he testified that he was satisfied with Counsel's representation and had no complaints at the time.

Counsel testified that he began practicing law in the 1970's and that he had been practicing criminal law his entire career. Counsel recalled meeting with the Petitioner in court and scheduling to meet with him again after Counsel had obtained the discovery packet from the Petitioner's previous attorney. Counsel reviewed the discovery with the Petitioner and discussed with him the issues relevant to his case. Counsel obtained recordings of the controlled drug buy and, after listening to them, attempted to discuss them with the Petitioner, however, on that visit, the Petitioner was "combative" towards Counsel and refused to listen to the recordings.

Counsel advised the Petitioner that he was facing up to twenty-five years of incarceration if convicted and discussed the sentence on a number of occasions with the Petitioner. The Petitioner refused to accept the State's first offer of twenty-two years, so Counsel "went back to work" negotiating with the State to get a shorter sentence. Counsel stated that he did not file certain motions because the Petitioner had filed them *pro se* prior to Counsel's representation of him, and those motions had been denied. Counsel agreed that he was contacted by a private investigator hired by the Petitioner's family, and Counsel gave the investigator the relevant information to allow him to begin his investigation. Counsel stated that the Petitioner was not interested in Counsel's strategy for his case, and because the investigator seemed to have a good rapport with the Petitioner and his family, Counsel wanted him involved and requested funds from the Administrative Office of the Courts to allow the investigator to continue to work on the case. Despite Counsel's feelings that his relationship with the Petitioner was bad, he remained on the case because he felt that, if he worked with the investigator, they could together accomplish something positive in the outcome of the case.

Counsel told the investigator to specifically look into the CI because Counsel felt as if the case hinged on the CI's credibility. Counsel and the investigator together reviewed the information provided by the police and discovery from the State about the controlled drug purchases made by this particular CI, including audiotapes. Based on this, Counsel attempted to discuss with the Petitioner the plea offers because he felt that the investigation showed that it was in the Petitioner's best interest to plead guilty. The Petitioner remained adamant about going to trial. In such a situation, Counsel testified

that he would pursue a "dual track" that involved continuing to prepare for trial because he had no way of knowing if the Petitioner would change his mind and accept a plea offer.

After the first day of trial, Counsel testified that he felt the State's case was fairly strong, although there were "small inconsistencies" in the police officer's testimony which Counsel explored on cross-examination. The CI's testimony was also significant to Counsel, because Counsel felt that the CI still had a drug use problem and Counsel exposed that to the jury; however, Counsel was not able to "shake" the CI's identification of the Petitioner to the jury as the person who he had known for some years. On the morning of the second day of trial, Counsel contacted the State to ask if a plea agreement could still be reached. Counsel "begged" the State to give the Petitioner less time, and the State agreed to the eighteen-year sentence, which included offenses in a separate case, at 35%. Counsel and the investigator then spoke to the Petitioner about the offer, but the Petitioner felt that the first day of trial had gone well and was more optimistic than Counsel. Counsel advised him that the State's offer could have him released from prison within six and a half years. The Petitioner was concerned about being a "quitter" as well as his family, so the investigator arranged for telephone calls with the Petitioner's family. The Petitioner spoke to his sister and girlfriend and, after getting off the phone with them, agreed to enter a guilty plea. The Petitioner was "emotional" but indicated that he felt it was in his and his family's best interest.

Once the plea agreement document was made available to Counsel, he went over it with the Petitioner "line-by-line" and "concept-by-concept" and gave the Petitioner a chance to read the document himself. Counsel testified that he had represented clients in the past who had difficulty reading and thus he made it his practice to "go over in detail each and every right that the defendant forfeits by entering into a plea, and [he] did that so particularly in this case given the nature of the circumstances and the relationship [he] was having with [the Petitioner.]" Counsel did so in the presence of the investigator. The Petitioner told him that he understood the plea agreement and signed it. Counsel explained to the Petitioner that he was pleading to a lesser charge and that the remaining counts would be dismissed. Counsel reiterated that, in their discussions, Counsel reviewed with the Petitioner the results of the investigation and discovery requests and discussed possible defenses. Counsel denied that he coerced the Petitioner into accepting the plea offer but agreed that he advised him to accept it.

On cross-examination, Counsel agreed that his relationship with the Petitioner was contentious. The Petitioner focused on "irrelevant" aspects of his case, and Counsel did not want to perform the tasks that the Petitioner felt he needed to. Counsel recalled that the Petitioner reported him to the Board of Professional Responsibility prior to their second meeting, as he had done with all his previous attorneys. Counsel testified that he

5

remained "gung-ho" about his representation. Counsel explained to the Petitioner that the case was a "classic" controlled drug buy but that the Petitioner focused on menial details that were not dispositive of the case. Counsel recalled that on the day the Petitioner pleaded guilty, he asked to speak with his family, and the investigator used his own phone to call the Petitioner's family members.

Counsel stated that the Petitioner "didn't think the world" of him and that he felt similarly about the Petitioner but stated that he was a professional and had a "high responsibility" to represent the Petitioner despite their differences. Counsel felt that he understood the Petitioner's situation and wanted to properly assist him in making a good decision about the outcome of his case. Counsel stated that he would have tried the rest of the case if he thought it was best for the Petitioner. Counsel recalled that he provided some of the discovery documents to the Petitioner but, at the time, the Petitioner refused to take them.

Counsel recalled that the Petitioner raised an issue about the marked money used during the controlled buy. The Petitioner maintained that the money was never recovered, but Counsel showed him pictures of the money and said that in a case such as this where the arrest did not occur immediately after the drug purchase, often times the marked money was not recovered.

Mark Duhaime testified that he was the private investigator retained in the Petitioner's case and that he contacted Counsel in relation to his investigation. The two men met, and Counsel provided him with the discovery file, which he reviewed. Mr. Duhaime visited the Petitioner with Counsel on "many occasions" to speak with the Petitioner about the contents of discovery, trial strategy, defenses, and a possible plea agreement. Mr. Duhaime gave Counsel certain questions to ask witnesses at trial who Mr. Duhaime had interviewed. Mr. Duhaime assisted Counsel on the first day of trial, and he was present the second day during the plea discussions and when the Petitioner called his family members. Mr. Duhaime recalled that once the Petitioner decided to accept the plea offer, Counsel went over the documentation with him. Mr. Duhaime recalled that the Petitioner accepted the plea offer before he called his family and that it was the Petitioner's idea to call them.

The Petitioner testified in rebuttal that he met with Counsel and told him what he wanted Counsel to "look into." Following this meeting, the Petitioner did not hear from Counsel for six weeks so he filed a complaint. He agreed that when they finally met, they got into an argument and that their relationship was contentious. The Petitioner testified that Counsel never went over discovery with him and said that he did not care what happened to the Petitioner. The Petitioner testified that Counsel never showed him one piece of paper from discovery. He denied requesting to call his family members.

At the conclusion of the hearing, the post-conviction court denied the petition, stating the following:

Now, as to whether the plea was voluntary or not, I have proof before me in both the form of the testimony of [Counsel], the testimony of Mr. Duhaime and the . . . plea agreement . . . as well as the questions that I asked of [the Petitioner] in the transcript that lead me to only one conclusion and that is that this plea was clearly voluntary without -- without question.

Then we get to the issue of ineffective assistance of counsel. The allegation in this case is that [Counsel] was ineffective in that he didn't explain to his client his right to appeal. [Counsel] says I did, but more importantly, [the Petitioner] petitioned the Court and the document saying that he understood his right to appeal and then he answered me in open court more than once saying he understood, that if I accepted a plea he would be giving up his right to appeal so there's no merit whatsoever to that allegation.

Secondly, he never explained to [the Petitioner] the results of the investigators investigation. Well, Mr. Duhaime did it himself. . . . [O]n the day of the first -- the first day of trial, [Counsel] did everything he could to chop up the confidential informant into little pieces. I mean the man was not clean under any circumstance, but what [Counsel] couldn't do was to shake the identification and then they had a recording of the entire transaction. So between the identification of [the Petitioner], who, himself, acknowledges, knew the CI because I've known him eight years in Hard Bargain, and the recordings and the other evidence that was presented in the first day of trial, there was no way to overcome that -- that issue no matter what the investigator had done. No matter what the investigator had done regarding the confidential informant's background.

Then it's alleged that [Counsel] was deficient in not going over the results of discovery. The proof in this case is in the Court's mind clear that [Counsel] did everything he could to go over the results of discovery with [the Petitioner]. [The Petitioner] had his own agenda. He believed that because another case had been dismissed, that created a basis for dismissal of the charges that he was facing. He also believed incorrectly that certain constitutional principles would apply. He also believed that his theory of what to go about -- that his theory of what [Counsel] should do in

7

defending him, well, it's more important in understanding what the State was going to prove if he went to trial. . . .

And then in terms of defenses, the Court without any question finds that [Counsel] explained to [the Petitioner] the defenses that they would mount including attacking the police officer for his misidentification of a vehicle, attacking the confidential informant because of his poor character and prior criminal history, and that at the end of the first day of trial, [the Petitioner] was pleased. He commended [Counsel] on the job that he'd done.

Then we get to the allegation that the plea was coerced and not voluntary. I have addressed that thoroughly in my findings. The fact that [the Petitioner] was upset and crying, I can understand that. [The Petitioner] was 50 years old at the point in time when he was facing this charge in trial and now he's looking at an 18-year sentence. Take six years, six plus years in order to reach a release eligibility date so the Court understands why he would be upset. The fact that he discussed this plea with his sister and he discussed it with the mother of his child, whether that occurred before he agreed to take the plea or whether it occurred after he agreed to take the plea, in the Court's mind is not material. At the end of the day it was [the Petitioner's] decision and his alone to make the agreement with the [State]. [Counsel] was willing to try this case as he said to the wall. He was willing to go forward and try this case if necessary.

. . . .

In short, the Court finds no merit in the allegation that this plea was coerced and not voluntary. The Court does understand that [Counsel] did his very best to convince you that this plea was in your best interest as I think any good lawyer should attempt to do and he succeeded and the Court applauds him for doing that. Now, it's the burden of [the Petitioner] to satisfy this Court. To show that he received ineffective assistance of counsel, and as a result of that ineffective assistance and the result of his case would be different and he's got to make that showing by clear and convincing evidence, the Court finds that he has not carried his burden in either instance.

It is from the post-conviction court's judgment that the Petitioner now appeals.

**II. Analysis**

The Petitioner contends on appeal that the post-conviction court erred when it denied his petition because he received the ineffective assistance of counsel because Counsel failed to discuss the discovery file and the results of the investigation with him, and failed to "focus on presenting a defense" for the Petitioner. The Petitioner also contends that his plea was involuntarily entered because he was pressured into pleading guilty by Counsel and the Petitioner's family. The State responds that Counsel's representation of the Petitioner was not ineffective, and that the record shows that his plea was voluntarily entered, as evidenced by the Petitioner's testimony at the post-conviction hearing and the extensive guilty plea colloquy. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

This standard also applies to claims arising out of the plea process. *Hill v.*

*Lockhart*, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

We conclude that the evidence does not preponderate against the trial court's findings of fact. Counsel testified that he met with the Petitioner to discuss his case and go over the discovery file. Their professional relationship did not progress well, but the Petitioner seemed to get along with the investigator whom Counsel utilized during his meetings with the Petitioner to continue to work on the case. Together with Mr. Duhaime, Counsel reviewed the results of Mr. Duhaime's investigation and developed a strategy for trial which mainly centered around attacking the credibility of the CI, who had a lengthy criminal history. Counsel stated that his attacks on the informant's credibility were somewhat blunted by the fact that the informant had known the Petitioner personally and could identify him as the drug seller. Counsel testified he was, as always, prepared to go to trial but advised the Petitioner that he felt it would be in the Petitioner's best interest to enter a guilty plea and get a shorter sentence. Counsel felt that the weight of the evidence against the Petitioner was strong, particularly because of the informant's identification. Because of the strength of the State's case, Counsel worked throughout his representation to get a better plea offer from the State; he was, however, prepared to represent the Petitioner however he chose to proceed. Ultimately, Counsel secured an offer which allowed the Petitioner to potentially be freed from prison after six-and-a-half years; the Petitioner could have been sentenced up to twenty-five years if convicted by a jury. After our review of the evidence, we conclude that the Petitioner has not shown that he received the ineffective assistance of counsel based on Counsel's advice to the Petitioner to plead guilty. Counsel was prepared to go to trial and had developed a trial strategy to impeach the CI's credibility; however, Counsel advised

11

the Petitioner to plead guilty because of the fact that the CI could identify the Petitioner personally. Counsel stated that he felt it was in the Petitioner's best interest to enter a plea because of the strength of the evidence. The Petitioner was subject to a lengthy sentence if found guilty by a jury and Counsel secured a shorter sentence through a plea agreement with the State. Counsel's representation in this regard was within the range of competence demanded of attorneys in criminal cases.

We also conclude that the Petitioner has not shown that his plea was entered unknowingly or involuntarily. Counsel and Mr. Duhaime testified that the Petitioner decided to plead guilty, and Counsel stated that this decision came after the Petitioner spoke with his family members. At the guilty plea hearing, the Petitioner expressed his understanding of the implications of his decision to plead guilty and affirmed that he did not wish to continue with his trial, which is evidence that the Petitioner was not coerced. The trial court discussed at length with the Petitioner the ramifications of his decisions. The Petitioner had ample opportunity to express his discomfort with or misunderstanding of his guilty plea, as well as to voice his concern that the decision was not his own but influenced by Counsel or his family. The Petitioner has not provided any evidence that shows that his plea was not knowingly and voluntarily entered. Accordingly, we conclude that the Petitioner is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

12